IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAFFER REACHOUT FOUNDATION,<br><br>        Plaintiff,<br><br>    v.<br><br>ARABESQUE INC., MOORISH INTERIORS, MORESQUE INC., MHAMMED NAJI, REDA NAJI, and ADIL M. NAJI,<br><br>        Defendants. | CIVIL ACTION<br>NO. 12-7169 |

**MEMORANDUM**

**SCHMEHL, J.**                                                                                                                       October 15, 2014

        Plaintiff engaged Defendants (all of them, in Plaintiff's view) to provide a variety of interior work, such as decorative woodwork and tiling, for a mosque project in Florida. Plaintiff, a Pennsylvania company, filed suit based on multiple alleged deficiencies in the carrying out of the project by the Defendants, who are companies and individuals variously from Virginia and Morocco. Defendants moved to dismiss, identifying a litany of problems with the complaint. Because the Court finds Plaintiff has not made out an adequate case for personal jurisdiction over the Defendants, the case will be dismissed without reaching the numerous other issues.

Factual and Procedural Background

        Plaintiff Jaffer Reachout Foundation is a nonprofit based in Allentown, Pennsylvania. Plaintiff undertook a project to construct a mosque in Sanford, Florida, and in early 2012, its representative Gulamali Jaffer sought services apparently related to the interior finishing of the mosque. To that end, Plaintiff began discussions of the project

with Defendant Adil Naji on behalf of Defendant Arabesque, Inc., a Virginia corporation of which he is CEO. Also named as Defendants are: Moresque, properly a Moroccan SARL, akin to an LLC; Moorish Interiors, also a Moroccan SARL; and Reda and Mhammed Naji, relatives of Adil Naji and apparently citizens and residents of Morocco. Plaintiff alleges, and with respect to Arabesque supports with documentation, that all three individuals have various officer roles within each of the companies. The Defendant businesses provide materials and installation for the type of tile work, woodwork, carved plaster, etc. typical of mosque design.

At unspecified times in early 2012, Adil Naji went to the project site in Florida and communicated by phone and email with Plaintiff. He also visited Jaffer in Pennsylvania to negotiate and discuss the project; Plaintiff asserts Adil Naji stayed overnight on that occasion, though Defendants insist it was for only one day and fix the date as January 8, 2012. Following these negotiations, Plaintiff alleges the parties came to an agreement that the work would be done for $2.1 million; the use of passive voice here is deliberate, because while Plaintiff initially alleges that negotiations began with Arabesque, Plaintiff thereafter refers to "the parties," "Defendants," or "the Naji Family" without differentiation. At some later point, Plaintiff alleges Adil Naji informed Plaintiff that the price of the work would have to increase by $200,000; Plaintiff balked and threatened to contract with another company. At that point, Reda Naji took over from Adil Naji, contacted Plaintiff, and renegotiated. According to Plaintiff, "[u]ltimately, the parties agreed that Defendants would perform the required work for the payment of one million nine hundred thousand dollars." Plaintiff also alleges the agreement provided that Plaintiff would pay for room and board for fifteen workers, and make defined payment

installments ($500,000 initially, $500,000 when work began, then increments of 10% after 60% of the work was complete). Plaintiff alleges Arabesque emailed the agreement and—calling it "[a] true and correct copy of the Agreement"—attaches a cost breakdown with Arabesque's logo and a variety of handwritten notations, but no agreement language, signatures, or contract provisions of any kind. Defendants insist any agreement was solely between Plaintiff and Moorish Interiors.

Plaintiff did make two $500,000 payments, one to Arabesque and one to Moorish Interiors. However, even before the second payment, Plaintiff alleges that Defendants began falling short of their obligations. Specifically, Plaintiff alleges unsatisfactory craftsmanship, fewer workers than promised, safety violations, lack of insurance, and delays. At the end of August 2012, Plaintiff "had Defendants pulled from the job site," apparently terminating the agreement.

Plaintiff filed a complaint on December 21, 2012, bringing claims for breach of contract, fraud/intentional misrepresentation, negligent misrepresentation, unjust enrichment, promissory estoppel/detrimental reliance, conversion, piercing the corporate veil, and civil conspiracy. On April 5, 2013, Defendants moved to dismiss on numerous grounds, including a lack of personal jurisdiction. Judge Slomksy ordered a hearing on the motion, which after rescheduling took place on June 26, 2013.[1]

As discussed at the hearing, Judge Slomksy then ordered jurisdictional discovery, which the parties apparently had not conducted by the time the case was transferred to the undersigned on July 30, 2013. Upon the transfer, counsel for Defendants contacted the Court to express concerns about the cost of international, multilingual jurisdictional

---

[1] Review of the seventy-five-page transcript of the hearing shows that while the hearing was substantial, it was essentially oral argument, but it is worth noting that the order refers to it as a hearing and the parties did attach numerous exhibits to their motion papers, just as they have on the renewed motion.

discovery and ask if the undersigned shared Judge Slomsky's opinion on the necessity of such discovery; counsel further argued that Plaintiff had not met the standard to be afforded an opportunity for such discovery. After reviewing the transcript of the hearing before Judge Slomksy, holding a telephone conference with all counsel, and receiving short supplemental briefs, the Court concluded jurisdictional discovery was indeed appropriate but issued an order limiting it, at least initially, to paper only, rather than depositions. Despite again being given the opportunity to conduct discovery and having been informed by two different judges that jurisdictional discovery would be very helpful in clarifying the issues, Plaintiff failed to issue any jurisdictional discovery requests or answer those issued by Defendants. Plaintiff simply amended the complaint, which the Court's orders had permitted. The amendment triggered the renewal of the motion to dismiss on the same bases. After stipulated extensions, briefing was complete on February 24, 2014.

Discussion

Though Defendants raise twelve separate points, the fundamental issue of the motion to dismiss remains personal jurisdiction. The Court will discuss only that issue because it concludes Plaintiff has not met its burden with regard to the Court's exercise of jurisdiction over the Defendants.

"'[T]he burden of demonstrating the facts that establish personal jurisdiction,' falls on the plaintiff, and 'once a defendant has raised a jurisdictional defense,' the plaintiff must 'prov[e] by affidavits or other competent evidence that jurisdiction is proper.'" *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)

(quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) and *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)). That said, when the Court does not hold an evidentiary hearing, "the plaintiff[s] need only establish a prima facie case of personal jurisdiction and the plaintiff[s] [are] entitled to have [their] allegations taken as true and all factual disputes drawn in [their] favor." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (alteration in original) (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)). But even when only a prima facie case for jurisdiction is necessary and the Court must accept allegations as true, a prima facie case requires "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *MIG Investments LLC v. Aetrex Worldwide, Inc.*, 852 F. Supp. 2d 493, 502 (D. Del. 2012) (quoting *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).[2]

Here, the Court has chosen not to hold an evidentiary hearing. The parties have taken two opportunities to submit a number of affidavits and other exhibits and have repeatedly briefed and orally discussed the jurisdiction issues with the Court. Plaintiff has

---

[2] The standard in the absence of an evidentiary hearing seems settled but continues to be slightly vague. The Third Circuit still says that while allegations must be accepted and facts must be construed for plaintiffs, plaintiffs "need[] to make a threshold showing in support of jurisdiction." *Metcalfe*, 566 F.3d at 331. A "showing" tends to mean more than allegations. Some District Courts, even when recognizing the *O'Connor* and *Metcalfe* rule regarding the standard without a hearing, continue to cite back to an older principle that "the nonmoving party must base its prima facie showing of personal jurisdiction over the moving party on evidence of specific facts set out in the record." *Westfield Ins. Co. v. Interline Brands, Inc.*, CIV. 12-6775 JBS/JS, 2013 WL 6816173 (D.N.J. Dec. 20, 2013) (quoting *Joint Stock Soc. Trade House of Descendants of Peter Smirnoff, Official Purveyor to the Imperial Court v. Heublein, Inc.*, 936 F. Supp. 177, 192 (D. Del. 1996)); *see also Roulhac v. Lawler*, 1:12-CV-311, 2013 WL 2418219 (M.D. Pa. June 3, 2013) (noting conclusory allegations, considering an affidavit submitted by the party opposing jurisdiction, and finding no jurisdiction); *Sides v. Harley-Davidson, USA*, CIV.A. 12-6330, 2013 WL 2061371 (E.D. Pa. May 15, 2013) (recognizing that allegations must be accepted and going on to state: "Nevertheless, 'at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.'" (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 68 n. 9 (3d Cir. 1984))). Regardless, as discussed below, the Court believes its decision in this case is correct despite giving deference to the Plaintiff's allegations as apparently required by *O'Connor* and *Metcalfe*.

elected not to conduct jurisdictional discovery and has failed to answer Defendants' jurisdictional discovery requests; an immediate consequence of that choice not to develop the record is a reduction in the usefulness of an evidentiary hearing. Though the Court acknowledges these circumstances, strictly speaking there has been no evidentiary hearing, so the Court will take Plaintiff's allegations as true and require only a prima facie case, albeit one supported by allegations of "reasonable particularity." *MIG Investments LLC*, 852 F. Supp. 2d at 502.

Establishing such a prima facie case for the exercise of personal jurisdiction first requires a statutory basis in the forum state plus sufficient minimum contacts to satisfy constitutional due process. *See Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010). The first aspect collapses into the second where, as in Pennsylvania, the forum state's long-arm statute extends jurisdiction to constitutional limits. *See* 42 Pa. Cons.Stat. Ann. § 5322(b); *O'Connor*, 496 F.3d at 316.

A defendant's contacts are analyzed in the context of either general or specific jurisdiction. *See Metcalfe*, 566 F.3d at 334. Plaintiff here claims only specific jurisdiction. "Specific jurisdiction exists if the defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation marks omitted)). This requires that "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see also O'Connor*, 496 F.3d at 317. "Unilateral activity" by the plaintiff does not count in this analysis, *Hanson*, 357 U.S. at 253, because "what is

necessary is a deliberate targeting of the forum" by the defendant, *O'Connor*, 496 F.3d at 317. A claim and the contacts out of which it arises must have "a closer and more direct causal connection than that provided by the but-for test"; the less stringent but-for test "is satisfied when the plaintiff's claim would not have arisen in the absence of the defendant's contacts." *O'Connor*, 496 F.3d 312, 319, 323.

A determination of specific jurisdiction with respect to a contract claim involves consideration of "whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001).[3] A court considers "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001). Physical presence in the forum is no longer determinative in a world of business conducted by telecommunication, *see Gen. Elec.*, 270 F.3d at 150-51, but merely contracting with a forum resident is not sufficient, *see Farino*, 960 F.2d at 1223. Remote contacts may be more likely to ground jurisdiction if the parties engage in an ongoing relationship such that the non-resident contemplates continually or repeatedly receiving the advantage of the relationship with the forum resident. *See Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 178 (3d Cir. 2006); *Farino*, 960 F.2d at 1223; *Reynolds Publishers, Inc. v. Graphics Fin. Grp., Ltd.*, 938 F. Supp. 256, 260 (D.N.J. 1996)

---

[3] Specific jurisdiction is usually assessed on a claim-by-claim basis, though it may not be necessary for some overlapping claims. *See O'Connor*, 496 F.3d at 317 n.3. Though Plaintiff raises several claims, the contractual relationship is the center of the case, and the contract claim provides the strongest possibility of personal jurisdiction because it allows consideration of contacts related to formation and negotiation, and the main forum contact is the visit by Adil Naji to Pennsylvania for negotiations. The case for jurisdiction over Defendants regarding the other claims is weaker because the reasoning of *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141 (3d Cir. 1992), and *HS Real Co., LLC v. Sher*, 526 F. App'x 203 (3d Cir. 2013), discussed below, would apply more readily to the non-contract claims.

(focusing on the "consequences of an ongoing commitment" despite lack of physical presence where the relationship "spanned several years and several lease contracts").

Specifically, a physical visit to the forum state for negotiations may support the exercise of specific jurisdiction with respect to claims based on an agreement arising from those negotiations, though perhaps not standing alone. *See DiMark Mktg., Inc. v. Louisiana Health Serv. & Indem. Co.*, 913 F. Supp. 402, 407 (E.D. Pa. 1996) (noting that "[m]ost important to our analysis is the 1994 meeting at [plaintiff's] offices to negotiate the Marketing Plan," but also factoring in "evidence that [plaintiff] executed the 1994 Agreement in Pennsylvania, that [defendant] knew that [plaintiff] was a Pennsylvania corporation and would largely perform its duties in Pennsylvania, that [defendant] entered into a series of contracts with [plaintiff] and sent its employees to Pennsylvania to meet with [plaintiff's] employees on five separate occasions and that it directed numerous communications and payments to Pennsylvania").[4]

One further bit of reasoning may affect the evaluation of whether a claim properly arises out of a physical visit to the forum. In *Carteret Sav. Bank, FA v. Shushan*, the court considered claims for intentional misrepresentation and breach of fiduciary duty. 954 F.2d 141, 145-50 (3d Cir. 1992). The court approved the exercise of specific jurisdiction based on phone calls and correspondence plus a single in-forum meeting. *Id.* at 146, 150. More recently, the Third Circuit considered a claim for fiduciary breach under which the plaintiffs claimed they would not have entered into a transaction with the defendant had

---

[4] Though it has no real precedential value, for an opinion finding an in-forum meeting insufficient, *see SeaTrepid Louisiana, LLC v. Richard Phillips Marine, Inc.*, CIV.A. 09-3174, 2009 WL 1402232 (E.D. La. May 14, 2009). There, the principal of an Oregon corporation went to a trade show in Louisiana, met there with officials of a Louisiana LLC regarding a project to be conducted in Washington state, and then—by email and phone—negotiated and finalized an agreement to engage the Louisiana company for the project. *Id.* The court found the defendant had not purposefully availed itself of the privilege of conducting business in Louisiana, discounting the initial in-person meeting and likening the case to those where merely contracting with a forum resident is insufficient. *Id.*

8

defendant not failed to disclose particular information. *See HS Real Co., LLC v. Sher*, 526 F. App'x 203, 206 (3d Cir. 2013). The court found the claim did not arise out of the defendant's travel to the forum for a meeting over a few days at which the parties discussed the transaction, noting that the transaction was a possibility months before the meeting and was not finalized until months after the meeting, and defendant failed to disclose the information throughout the relationship; therefore, plaintiffs could not even satisfy the but-for standard because the failure to disclose *during the in-forum meeting*, as opposed to over the whole course of dealing, had no causal link to the claim asserted. *Id.* The court distinguished *Carteret*, noting that there, "the plaintiff alleged that a specific fraud took place at the New Jersey meeting." *Id.* This reasoning indicates the causal link between an in-forum meeting and a claim is insufficient if the wrongdoing complained of was not specific to the forum visit; however, *HS Real* may be less applicable to contract claims because, as noted, other precedents require consideration of contacts related to formation, not just breach.

    In this case, the strongest alleged contact of any Defendant with the forum is Adil Naji's visit to Pennsylvania to conduct negotiations with Plaintiff's representative. Holding that visit aside for a moment, the other forum contacts are insufficient to support the exercise of specific jurisdiction. It is of no import that "[t]he Project's general design was conceived, implemented and monitored by Plaintiff from its offices in Pennsylvania, through acts and communications originating there," Am. Compl. ¶ 22, because those are Plaintiff's unilateral activities. The same is true of the fact that Defendant received payments from Plaintiff's bank in Pennsylvania; the bank's location is Plaintiff's doing and is merely incidental to the simple and insufficient fact of contracting with a

Pennsylvania resident. Plaintiff also alleges that "Defendants initiated communications with Plaintiff by sending electronic mail, facsimiles and/or making phone calls to Plaintiff in Pennsylvania on a daily basis." Am. Compl. ¶ 34. Despite the opportunity to amend the complaint—and the wasted opportunity to conduct discovery in support of such amendment—Plaintiff has not made more specific allegations about the content of these communications or the involvement of each Defendant. The Court cannot determine whether each particular Defendant might have had sufficient contact or whether these communications were instrumental in formation or breach (some, many, or all of these communications may have dealt only with routine or uncontroversial aspects of the mosque project). It is Plaintiff's burden to provide particular allegations on which the Court can make those determinations. It is also worth noting that while there may have been frequent communication and the project was substantial, the parties were engaged in a single contracted project, not an ongoing business relationship with recurring or especially long-term obligations. Moreover, none of the performance of the agreement was to take place in Pennsylvania; all performance was to occur in Florida and possibly Morocco. Taking all these circumstances into consideration, the allegations are insufficient to show that Defendants have the necessary minimum contacts and that Plaintiff's claims arise from those contacts.

   Merely adding Adil Naji's negotiation visit to the calculation does not alter this Court's conclusion. First, the visit does not seem to satisfy the but-for test, let alone the stronger link required. According to Plaintiff's complaint, the parties were in repeated discussions about the project both before and after the Pennsylvania visit; the alleged final version of the agreement was at least two iterations beyond what came of the visit

(negotiations with Adil Naji allegedly ended at $2.1 million, followed by an attempted increase of an additional $200,000, with the final at a reduced $1.9 million) and was reached after setting aside Adil Naji's involvement. The agreement and Plaintiff's claims might well have arisen without Adil Naji's Pennylvania visit. Plaintiff has offered no reason to think the visit has the even tighter causal link with Plaintiff's claims required by *O'Connor*. As with the above analysis, the totality of the circumstances, such as the lack of any performance in Pennsylvania, still weigh against the exercise of jurisdiction when the visit is factored in. There is also no allegation that the wrongdoing giving rise to the claim occurred during Adil Naji's visit, so *HS Real* would counsel against jurisdiction if applicable, as it likely is at least to the non-contract claims.

Moreover, the allegations generally lack the reasonable particularity necessary to trace jurisdiction from the visit (or the other contacts, for that matter) to any particular Defendant. Plaintiff does not offer or allege a formal contract that names or is signed by the parties involved. Plaintiff provides only an allegation that, "[u]ltimately, the parties agreed that Defendants would perform the required work"—again referring to "Defendants" generically—along with a cost estimate showing handwritten annotations and Arabesque's logo or letterhead. Am. Compl. ¶ 40; Plaintiff's Opp. to Motion, Ex. F. Plaintiff does make some allegations of interconnectedness between the companies, including advertising materials that list Arabesqe and Moresque together (but not Moorish Interiors), the fact that both Arabesque and Moorish Interiors accepted payments from Plaintiff, and the fact that officer positions in each company are held by a mix of the individual Defendants. The Court suspects there is indeed some level of intermingling of operations and interests between the various Defendants but lacks the specifics necessary

to determine the legal consequences for the various Defendants' contractual obligations or, relatedly, their jurisdictional susceptibility. Indefinite intermingling is insufficient to determine legally that a visit to the forum by one individual—who himself is not clearly a party to the alleged contract and thus may not himself be subject to any jurisdictional linkage—can bind two other individuals and three business entities to the jurisdiction of this Court. Under the circumstances, which include a total lack of performance in the forum and the absence of a formal contract specifying particular Defendants' involvement in a $1.9 million endeavor, broadly alleging an agreement with "Defendants" is not enough to show that each Defendant is linked to the jurisdictional contacts of every other Defendant. Despite the opportunity to amend and take jurisdictional discovery, Plaintiff has failed to set forth sufficient allegations from which the Court can determine that the alleged contacts support the exercise of jurisdiction over any particular Defendant in this case.

The Court will dismiss this action for lack of personal jurisdiction.[5]

---

[5] It is possible jurisdiction would exist in the Middle District of Florida, though the record and allegations are also insufficient to be certain of that. In any event, it does not appear that the statute of limitations would prevent Plaintiff from filing in Florida at this time, so there is no special need to transfer rather than simply dismiss the case. *See Weber v. Jolly Hotels*, 977 F. Supp. 327, 334 (D.N.J. 1997). The earliest any statute of limitations could possibly have begun running in this matter is early 2012, when communications between the parties began. That is just about two and a half years prior to the issuance of this opinion, and most or all claims in this case appear to be governed by at least a four-year statute of limitations in Florida. *See* Fla. Stat. Ann. § 95.11(3). If a Florida court were to determine the cause of action arose in Pennsylvania, fraud-based claims might be barred, *see* Fla. Stat. Ann. § 95.10; 42 Pa. Cons. Stat. Ann. § 5524, but that does not incline the Court toward transfer rather than dismissal.